## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHON WIGGINS, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-10-4209 |
| | § | |
| ST. LUKE'S EPISCOPAL HEALTH SYSTEM, | § | |
| *Defendant*. | § | |

## SUMMARY JUDGMENT ORDER

This Title VII sexual harassment and retaliation case is before the court on defendant's motion for summary judgment (Dkt. 42). Having considered the parties' submissions and the law and argument at a hearing on June 21, 2012, the court grants the motion.

### Background

The following facts are undisputed. Plaintiff Stephon Wiggins was employed by defendant St. Luke's Episcopal Hospital[1] from 1996 until 2010. In 2002, he became a Senior Admitting Interviewer responsible for admitting patients, including providing financial information and verifying insurance coverage. During the relevant period for this lawsuit, his immediate supervisor was Carlotta Hudson-Creese and he ultimately reported to the manager of the department, Michelle Hilburn.

---

[1]     The defendant was improperly named in the complaint and thus is misnamed on the docket sheet. This misnomer is of no import to the merits.

St. Luke's has an harassment policy, which is set forth in its Employee Handbook. The policy provides a mechanism for addressing complaints and correcting harassing behavior.

St. Luke's also has a corrective action policy to address employee behavior and performance issues. This policy is also contained in the Employee Handbook. This policy sets forth the steps of progress discipline, which are Notice of Concern, Written Conference, Probation and/or Suspension, and Discharge. Depending on the severity of the behavior, initial steps may be bypassed. Wiggins acknowledges having received a copy of the Employee Handbook.

On October 13, 2009, Wiggins had a disagreement with a co-worker. The next day, Wiggins confronted the co-worker. Hudson-Creese conducted an investigation in which she took written statements from several witnesses, including Wiggins, and determined that Wiggins had acted in an aggressive, confrontational manner. Hudson-Creese tried to explain to Wiggins why his conduct was inappropriate, but he disagreed and refused to acknowledge any wrong-doing. Hudson-Creese and Hilburn reported the incident and the written statements to St. Luke's Employee Relations department for guidance on how to proceed. A St. Luke's Employee Relations Specialist, Antrenette L. Carr, recommended placing Wiggins on investigative suspension effective October 20, 2009 pending a determination of appropriate discipline. Carr reviewed all the investigative findings and consulted with other

St. Luke's personnel and decided to place him on a 90-day probation, effective November 3, 2009.

The head of Wiggins's department, William Brosius, met with Wiggins on or about November 10, 2009 to discuss the circumstances leading to the probation. Wiggins complained to Brosius in that meeting and in a letter he wrote to Brosius on November 4, 2009 that he felt other employees had conspired against him to get him disciplined. Wiggins mentioned sexual harassment in the November 4, 2009 letter but did not include any details. Brosius found no support for the conspiracy assertion and asked for more information regarding the alleged sexual harassment. After the meeting, Brosius determined that the probation decision would stand.

St. Luke's contends that while on probation Wiggins was unprofessional, disruptive, and insubordinate to Hudson-Creese. Three of his co-workers complained that they were uncomfortable with Wiggins's intimidating behavior. Because he was already on probation, Employee Relations, with the approval of Brosius, decided to terminate Wiggins's employment effective November 20, 2009.

In his complaint, Wiggins's alleges that he was subjected to sexual harassment by "some female employees in his unit" beginning in July 2009. He claims he complained about these actions to Hilburn, Brosius, and a human resources representative, Debora Mahannah, but they did nothing and the conduct continued. He further alleges that shortly after he

engaged in protected activity by reporting the harassment, he was retaliated against by being

terminated.[2]  He also asserts a claim for intentional infliction of emotional distress.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the

moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The  party

moving for summary judgment has the initial burden to prove there are no genuine issues of

material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th

Cir. 2001).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable

jury to find for the nonmoving party.  *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001).

"An issue is material if its resolution could affect the outcome of the action."  *Terrebonne*

*Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

A summary judgment movant who bears the burden of proof on a claim must establish

each element of the claim as a matter of law.  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194

(5th Cir. 1986).  If the movant meets this burden, "the nonmovant must go beyond the

pleadings and designate specific facts showing that there is a genuine issue for trial."

---

[2]     Wiggins appears to argue in his response (Dkt. 44) that he was the victim of racial
harassment.  There is no race-based claim in this lawsuit.  He did not file a charge based on
race with the EEOC (*see* Dkt. 44 at 20), and did not assert a racial harassment or
discrimination claim in his complaint (*see* Dkt. 5).

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

## Analysis

1. **Hostile Work Environment Sexual Harassment**

The elements of a Title VII hostile work environment claim vary depending upon whether the person allegedly doing the harassing is a co-employee or a supervisor with immediate or successively higher authority over the plaintiff. *Watts v. Kroger Co.,* 170 F.3d 505, 509 (5th Cir. 1999). To establish a claim of harassment, a plaintiff must show: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon the protected status; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Where the harassment is perpetrated by a co-worker, the plaintiff must also show a fifth element: that his employer knew or should have known of the harassment and failed

to take prompt remedial action.  *Id.* at 434.  Title VII is violated when "the workplace is so permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Whether the harassment is sufficiently severe or pervasive to state a claim is judged by both an objective and a subjective standard.  *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (plaintiff's subjective perception must be objectively reasonable).  In other words, the harassment must be such that a reasonable person would find it hostile or abusive, and the victim must in fact have found it so.  *Harris*, 510 U.S. at 21-22.  In making this determination, the court considers factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  *Id.* at 23; *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000).[3]

Wiggins testified that between July 2009 and his termination the following events took place:  (1) a co-worker named Dee made a comment about the size of his shoes and

---

[3]     When the harassment in question was allegedly committed by a supervisor with immediate or successively higher authority over the plaintiff but did not result in a "tangible employment action" against the employee, an affirmative defense is available to the employer.  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  The affirmative defense has two elements: (a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior based on national origin, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  *See id.*  St. Luke's asserts the *Ellerth/Faragher* defense, but because Wiggins cannot meet his burden as to the elements of his case, the court need not address it.

what ladies say that means; (2) Dee made a remark in his presence but not directly to him that nobody should say anything about anyone's shoes or butt; (3) during a conversation between Wiggins, Dee, and another co-worker named Alicia, Alicia compared his butt to that of other men; (4) once, Hudson touched his hand while helping him with something on his computer; and (5) on some Tuesdays, Hudson's breasts brushed against him when she leaned over him to review work at the registration desk.[4]

Wiggins was subjectively offended by the sexual comments allegedly made by his female coworkers and the brief moments of physical contact with his female supervisor described above.  But nothing Wiggins describes even comes close to the type of severe or pervasive harassment that is actionable in the Fifth Circuit.  *See, e.g., Shepard v. Comptroller of Public Accounts of Tex.*, 168 F.3d 871, 872 (5th Cir. 1999) (references to plaintiff's nipples and thighs and multiple instances of touching not severe); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 321-22 (5th Cir. 2004) (multiple allegations of comments and touching, including an attempted kiss, not severe or pervasive); *Muniz v. El Paso Marriott*, 773 F. Supp. 2d 674, 680 (W.D. Tex. 2011) (repulsive and offensive comment about bratwurst, display of pornographic image, and offensive gesture not severe or pervasive), *aff'd Muniz v. Columbia Sussex Corp.*, No. 11-50392, 2012 WL 1674244 *1 (5th Cir. May 14, 2012).  St. Luke's will be granted summary judgment on Wiggins's hostile work environment claim.

---

[4]     Wiggins Dep. (Dkt. 42-2) at 70-87.

2. __Retaliation__

The elements of a retaliation claim are (1) protected activity; (2) a materially adverse

action; and (3) a causal link between the protected activity and the materially adverse action.

*Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414 (5th Cir. 2003).  In the context of

retaliation, a materially adverse action is one that "might well have dissuaded a reasonable

worker from making or supporting a charge of discrimination." *Burlington Northern & Santa*

*Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006).

Wiggins asserts that he was terminated for complaining to management about the

sexual harassment he was suffering in his department. But his first mention of "sexual

harassment" to Brosius is contained in a letter that came after the initial incident and

discipline that ultimately culminated in his termination.[5]  Therefore, there is a legitimate

explanation for the short period of time between the protected activity and the termination.

In addition, there is no evidence that Hudson-Creese knew about Wiggins's harassment

allegations when on November 19, 2009 she asked Employee Relations for guidance on the

appropriate disciplinary steps to take with Wiggins.[6]  Finally, there is no evidence to support

an inference that St. Luke's articulated reason for terminating Wiggins, *i.e.*, his insubordinate

---

[5]     *See* Dkt. 42-7 at 29-30.  There was some reference in the briefing and at the hearing to a harassment complaint by Wiggins in 2008, *see* Dkt. 42 at 31, but Wiggins makes no argument connecting his discipline and termination in 2009 to that complaint.  The record indicates, and Wiggins confirmed at the hearing, that the 2008 complaint was resolved to his satisfaction.  *See* Dkt. 42-3 at 2; Dkt. 42-4 at 2-3.

[6]     *See* Hudson-Creese Aff. (Dkt. 42-3) at ¶¶ 7-13; Carr Aff. (Dkt. 42-4) at ¶¶ 17-18.

8

and unprofessional conduct after his return from suspension and while on probation, is mere pretext for retaliation. For these reasons, St. Luke's will be granted summary judgment on Wiggins's retaliation claim.

### 3.      Intentional Infliction of Emotional Distress

The Texas Supreme Court recently made it clear that an employee's common law claims against an employer are preempted by the Texas Commission on Human Rights Act, whether or not the plaintiff brings an action under the Act. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 803 (Tex. 2010). St. Luke's is entitled to dismissal of this claim.

### Conclusion and Order

For the reason discussed above, St. Luke's motion for summary judgment (Dkt. 42) is granted. The court will issue a separate take-nothing final judgment.

Signed at Houston, Texas on June 22, 2012.

Stephen Wm Smith
United States Magistrate Judge